# City of New Castle *v.* New Castle Water Company, Appellant.

*Equity—Equity jurisdiction—Water companies—Duty to furnish pure water—Water rents—Restraint of collection.*

1. Where a water company has been incorporated under the Act of April 29, 1874, P. L. 73, its duty is at all times to furnish pure water within the district covered by its charter and jurisdiction in equity is conferred upon the Courts of Common Pleas to enforce performance of this duty at the complaint of any citizen.

2. It is inequitable that a corporation chartered and bound to furnish pure water to the public should be allowed to collect the price of a supply of good water from those to whom it delivers an article that cannot be used, and where for a period of time water unfit for consumption was furnished equity will restrain the collection of water rates or the enforcement of penalties for this period, notwithstanding the defects in the water supply may have been corrected prior to final decree.

Mr. Justice ELKIN dissents.

Argued April 19, 1915.   Appeal, No. 154, October T., 1914, by defendant, from decree of C. P. Lawrence Co., March T., 1913, No. 3, in equity, awarding an injunction, in case of City of New Castle, Charles A. Collins, T. W. Dickson, F. M. Maybury, Stewart Thompson, G. A. Schrock, C. A. Glasser, C. H. Milholland, Sewell N. Fulkerson, George C. Stone v. The City of New Castle Water Co.   Before BROWN, C. J., MESTREZAT, POTTER, ELKIN and FRAZER, JJ.   Affirmed.

Bill in equity for an injunction.   Before PORTER, P. J. The facts appear in the opinion of the Supreme Court.

The lower court entered a decree, set forth in the opinion of the Supreme Court.   Defendant appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and conclusions of law and the decree of the court.

*H. K. Gregory* and *J. Norman Martin,* for appellant. —The court had no jurisdiction to enjoin the water company from shutting off the water until the water rates for the period when bad water was supplied had been paid: Brace v. Pennsylvania Water Company, 24 Pa. Superior Ct. 249; Brymer v. Butler Water Company, 172 Pa. 489; Peffer v. Pennsylvania Water Company, 221 Pa. 578; Hinkson v. New Chester Water Co., 8 Del. County 417.

*James A. Gardner,* City Solicitor, for appellee.—The court properly enjoined the water company from collecting water rates for water supplied which was entirely unfit for domestic use: Brymer v. Butler Water Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506.

Under the Act of April 29, 1874, Section 34, P. L. 73, 93, the court had jurisdiction to entertain the bill and where a court of equity has once acquired jurisdiction, that jurisdiction will be retained until the whole case is determined and all questions both legal and equitable relating to the subject matter of the controversy are decided; the court therefore had jurisdiction to make the decree complained of: Turtle Creek Borough v. Penna. Water Co., 243 Pa. 415.

Opinion by Mr. Chief Justice Brown, July 3, 1915: At the time the bill in this case was filed, and for years prior therto, it was the duty of the City of New Castle Water Company, under the law and under its contract with the City of New Castle, to furnish pure and wholesome water to the said city and to the individuals, firms and companies therein desiring the same. After averring that the quality of water furnished by the said company prior to and at the time of the filing of the bill was

impure, unwholesome, not good or fit for domestic use or otherwise, and injurious to health, and that the water company would not make any reduction in its charges on account of the impure water furnished by it, but insisted upon full payment for all that had been furnished, the prayers of the bill were:

"1. That the said The City of New Castle Water Company be restrained from collecting from your orators, and from all consumers and users of water in said city any moneys, or water rates for the length of time it has been furnishing said impure water; and also restrained from collecting any such moneys or water rates, until it furnishes to said city, and other users of water, the pure water required to be furnished by law, and its contract with said city.

"2. That said company be restrained from turning or cutting off the water supply of your orators, or of any of the users of water in said city, by reason of the refusal of your orators and the other users of water to pay for the impure water already furnished or to be furnished hereafter.

"3. That said company be required to filter, cleanse and properly purify the water of the Shenango River, in such a way and manner as to provide your orators and all consumers and users of water in said city, with wholesome, good, pure, filtered water, equally as good as said company at any time heretofore furnished to said city and the inhabitants thereof.

"4. That said company be compelled to furnish the pure water to said city and its inhabitants, which it is required to furnish by law and its contract with said city."

After a full hearing on bill and answer and the taking of much testimony, the learned chancellor below decreed as follows:

"1. That the City of New Castle Water Company, defendant, be and is hereby restrained from collecting from all domestic consumers and users of water (not including water furnished to the public schools) in said City

of New Castle, any moneys or water rates for one and one-half months (1-2 of a quarter) between December 1, 1912, and March 1, 1913, during which time the said company did not furnish pure water.

"2. That said company be and it is hereby restrained from turning or cutting off the water supply of the said plaintiffs and of all other domestic consumers or users of water in said city, by reason of or for failure to pay said company for the impure water furnished by said company, for one and one-half months, between December 1, 1912, and March 1, 1913.

"3. That the water rates which the said company shall collect from the said plaintiffs and other domestic consumers and users of water in said city, are hereby reduced and changed, between December 1, 1912, and March 1, 1913, so as to prohibit and restrain said company from collecting water rates for one and one-half months between said dates."

The foregoing decree followed numerous findings of fact, not one of which has been assigned as error. From them we extract the following:

"11. The said City of New Castle, and the inhabitants thereof, depend wholly upon the said defendant company for their supply of water (save a few wells, springs, and sales of bottled water), said company being the only water company supplying water in said city.

"12. The said, The City of New Castle Water Company, has always obtained its supply of water from the Shenango River, which source of supply has in recent years become contaminated with industrial waste, refuse, phenols, creosols, naphthaline, and other similar substances in large quantities from factories and coke ovens so that the water therein in its raw state was not fit for domestic use and could not be rendered suitable and wholesome for domestic use unless it has been submitted to a high degree of filtration.

"22. The said defendant company had not for some time previous to the filing of the plaintiffs' bill in this

case, properly and sufficiently filtered the water which it has been furnishing to the said city and the users and consumers of water therein. The water which the said company was furnishing to the City of New Castle, and to the consumers and users of water therein at the time of the filing of the bill in this case, and for a large part of the time from December 1st, 1912, up to March 1st, 1913, was impure, containing phenols, creosols, naphtha-line, carbolic acid, and other similar offensive substances in large amounts, which rendered the said water un-palatable, disagreeable, and entirely unfit for drinking, cooking, or other domestic uses.

"23. During the time from December 1st, 1912, up to March 1st, 1913, a great portion of the time, amounting to about six or seven weeks, the water furnished by the said water company to the said City of New Castle, and to domestic and other consumers of water therein was so im-pure, being impregnated and contaminated with phenols, creosols, naphthaline and other similar substances in large quantities, as to render the same unfit for drinking purposes; it could not be used; it was so unfit for cook-ing purposes, that it could not be used; it tainted the food and rendered it so unpalatable and disagreeable, that the food could not be used; it was impregnated and contaminated to such a degree, that some of the persons using the same became sick; it created nausea; it was unfit for bathing purposes; and the water was so im-pure as to be entirely useless for any purpose, whatever, except for washing and scrubbing, or similar uses. The said water had such an offensive smell and odor as to render the same repulsive and a great annoyance.

"24. Prior to and after December 1st, 1912, up to the time of the filing of the bill in this case, the water fur-nished by the said water company to the City of New Castle, and to the consumers of water therein contained bacteria and b. coli in such quantities as to render said water of such a character that the same might be con-sidered dangerous to the public health; although there

was no perceptible increase in the amount of sickness in the city, during the said time. The said water had not been filtered to the efficiency of which it was susceptible, inasmuch as the said company has, after the filing of the said bill, improved its filtration plant to such an extent as to remove and lessen the number of bacteria, and to entirely or almost entirely remove the bacteria coli. But the company had begun to make said improvement long before the bill was filed and continued work thereon diligently until it was completed.

"25. The water furnished to the City of New Castle during the greater portion of the time elapsing between December 1, 1912, and March 1, 1913, was not of such a character as the said company was required to furnish in pursuance of the act of assembly, and its contract with the City of New Castle, the same being impure and not fit for drinking, cooking, and other domestic uses.

"26. The said water was rendered impure principally by reason of a certain by-product, a waste which was permitted to flow into the waters of the Shenango River from the plant of the Carnegie Steel Company at Farrell in Mercer County, the same being phenols, creosols, naphthaline and other similar substances, in large quantities and the said waste or by-product has been flowing into the said river in greater or less quantities from a coke plant of the Carnegie Steel Company for several years. But the water supplied to consumers in New Castle was affected only spasmodically by the flow of said substances into the Shenango River prior to December 1, 1912.

"27. Although the water company had begun to make improvements a considerable time before it was not until after the filing of the bill in this case that it succeeded in improving its filtration plant to the extent necessary to remove from the water the bacteria and bacteria coli therein contained and render said water wholesome and practically free from dangerous bacteria and b. coli."

The 28th finding of fact contains the following: "The

water remained free from odor and taste until about February 25, 1913, when for a few days it was again noticeable, then disappeared, and has not since been detected in the filtered water. The water furnished by the City of New Castle Water Company to its consumers has, since on or about the first of March, 1913, been free from the creosote odor and taste, and any other objectionable odor and taste, and the said company is now and has been since the early part of March, 1913, furnishing water that is good, pure, and wholesome, such as it is required to furnish by law and its contract with said city."

When the court below concluded the taking of testimony in support of the allegation of the bill, the matters complained of in it had been corrected by the defendant company. The finding is that there were no longer "unfavorable or evil conditions requiring correction with reference to the quality and quantity of water furnished by the defendant company to the City of New Castle and to consumers." The third and fourth prayers of the bill had been answered by the company itself, and no decree was needed to compel it to perform its duty to furnish pure water. But if it had not performed this duty after the bill of the complainants had been filed to compel performance, they would have been entitled to a decree to compel performance and to enjoin the collection of any charges for impure water furnished to domestic consumers. Brymer, et al., v. The Butler Water Company, 172 Pa. 489, is conclusive of this; but learned counsel for defendant contend that inasmuch as the evils complained of in the bill had been actually corrected by the company by the time the learned court had concluded the taking of testimony, its decree, enjoining the collection of water charges for impure water furnished to domestic consumers for one and one-half months, between December 1, 1912, and March 1, 1913, during which period it did not furnish pure water, is error for want of jurisdiction to make it. In

other words, the contention is that whether the water company can collect water rents or charges during the said period is a question to be decided by a jury on the law side of the court, and not by a chancellor. This is really the sole and narrow question in the case.

The defendant company was incorporated under the Act of April 29, 1874, P. L. 73, and its right to furnish water within the district covered by its charter is an exclusive one; but the duty imposed upon it is to "at all times furnish pure water," and jurisdiction is conferred upon the Court of Common Pleas within the district covered by the charter to enforce performance of the company's duties. That jurisdiction is thus conferred: "Any citizen using the same (water) may make complaint of impurity or deficiency in quality, or both, to the Court of Common Pleas of the proper county, by bill filed, and after hearing the parties touching the same, the said court shall have power to make such order in the premises as may seem just and equitable, and may dismiss the complaints or compel the corporation to correct the evil complained of." This provision in the Act of 1874 has been incorporated in all the amendments to it.

If, as was distinctly held in Brymer, et al., v. The Butler Water Company, supra, a decree ordering a water company to furnish pure water to its customers within its district, may, and properly does, include an order enjoining the making or collecting of any charge for impure water furnished, why should the decree complained of in the case at bar be reversed? The reason urged for its reversal is that the court below, in the exercise of its equitable jurisdiction conferred by the Act of 1874, was confined to a correction of the evils complained of, and as they did not continue up to final hearing, as in the Brymer case, it is without application. We are unable to follow this reasoning. While the jurisdiction conferred by the Act of 1874 is to enable the proper court to compel a water company to furnish pure water, that

court, in exercising the jurisdiction conferred upon it, may "make such order in the premises, as may seem just and equitable." Would it be just and equitable to permit this appellant to charge and collect for impure water merely because, after a bill had been filed to compel it to perform its duty it has performed by the time the chancellor was ready to make his decree? He was authorized by the statute to make such decree in the premises as seemed just and equitable, and this is a complete answer to the denial of his equitable jurisdiction to make the decree of which appellant complains. Suppose the relation between the water company and the City of New Castle was a contractual one; it was at the same time controlled by statute conferring upon the court below power to compel the water company to perform its duty, and, in the exercise of its jurisdiction, to make any just and equitable order, in a proceeding like the present one, instituted to compel performance of a contractual and statutory duty. The appellant did not perform, but nevertheless insists that the appellees must perform, under penalty of having their water supply cut off. This inequitable proposition is thus answered by Mr. Justice WILLIAMS in the Brymer case: "It is inequitable that a corporation chartered to serve a 'public use' and actually undertaking to serve the public with one of the necessaries of life should be allowed to collect the price of a supply of good water from those to whom it delivers an article that cannot be used, or be made fit for use by any process within their knowledge or reach. The relations between the defendant and its customers rest on contract, and if the commodity bargained for is not delivered it is elementary law that the price is not recoverable. . . . . . . Practically it is unimportant whether the water becomes unfit for use because of the neglect, or in spite of the vigilance of the company. The question to be considered as between the seller and buyer is, What is the fact? Is the water fit for use? The same question is also to be investigated by the court on behalf of the

public. Is the company meeting the objects of its organization and discharging its duty to the State by fairly serving the public use to which it is required to minister? If this question must be answered in the negative then the remedy is to order the company to render better service, and to suspend its right to collect rents until water is furnished that can be used with reasonable safety to its customers."

The decree is confined to domestic consumers and users of water for the period of but one month and a half. It is as mild as the undisputed facts could have justified. From all others than domestic consumers the company may collect for impure water furnished. In making his decree the learned chancellor had before him the contract between the water company and the city, and domestic consumers may be regarded as those therein so named and for whom rates are fixed. Apart from the contract, a domestic consumer of water is one using water in connection with his house or home, if its inherent and popular meaning is to be given to the word "domestic." Some water may have been used by domestic consumers in flushing closets or for washing or other purposes, but defendant company offered no evidence as to this and the court below was not asked to modify its decree in view of such use of the water.

Each of the assignments of error is overruled and the decree affirmed at appellant's costs.

Mr. Justice ELKIN dissents.